Your speech. Good morning, may it please the court. My name is Jenny Beach and I am here to defend Mr. Marshall McDaniel. Mr. McDaniel is entitled to habeas relief. The district court in this case rightly found constitutional error in the form of an arrest without probable cause. The district court erred, however... If you succeed, is he going to be better off? Excuse me? If you succeed, is your client going to be better off? Yeah, if we succeed, if we succeed here, the court should, the court should remand this case to the state court and allow Mr. McDaniel to bring his illegal arrest claim either at the Illinois Court of Appeals or else give him a new trial in which the confession is suppressed and does not come into evidence. And we would succeed because both the illegal arrest argument was a meritful argument that should have, that he would have won on appeal and if it goes back to the trial court and Mr. McDaniel gets a new trial without the confession, he absolutely would be better off and would, it most likely would have got a not guilty verdict from the jury. Didn't the state, Indiana state trial judge attempt to take into consideration the very issues you're concerned about here? The trial judge, there was a suppression hearing before the trial and the trial judge did take into that, into consideration the arguments here and wrongly concluded that there was probable cause to arrest Mr. McDaniel. And so it had appellate counsel brought that argument on direct appeal to the Illinois Court of Appeals. The Illinois Court of Appeals would have seen merit in that argument and would have reversed Mr. McDaniel's conviction. Now she didn't bring that argument and instead she decided to bring an argument that even respondent has called patently meritless. And so Mr. McDaniel, even though he asked his direct counsel on direct appeal to bring that argument and in fact even asked the, brought a motion himself, pro se, asking to be able to bring that argument to the Illinois Court of Appeals. That's how important that argument was to him. Now at what point are you contending that he was placed under arrest? Mr. McDaniel was placed under arrest when he was handcuffed in his home. So that occurred approximately at 8.35 on January 16, 2001. And that's exactly what the trial court found here. The trial court makes a finding, the state trial court makes a finding that that's when Mr. McDaniel was under arrest. And that can be found at docket number 59434. So Mr. McDaniel's under arrest at that point. There's a trial court finding to that and I don't believe that's ever been challenged, that Mr. McDaniel was seized for Fourth Amendment purposes at that time. So the district court erred here when it concluded with express hesitation that Mr. McDaniel's confession was sufficiently attenuated from the arrest that it was an act of Mr. McDaniel's free will. And as we have discussed in our briefs, the confession was the fruit of Mr. McDaniel's unlawful arrest and should have been suppressed. As we've discussed, Mr. McDaniel was arrested in his home without a warrant and without probable cause. He was transported to the police station, held in a small room with no windows, only a metal bench. He was held there for 24 hours. He did not sleep and he did not speak to anyone besides the detectives who were interrogating him. He was interrogated on numerous occasions and he repeatedly denied any involvement in Mrs. Moore's murder. And he was not allowed to leave even after those repeated denials. Eventually, the detectives obtained a confession from Mr. McDaniel. By the time the interrogation began, they had probable cause, didn't they? No, they did not. The state contends, the respondent contends here that they did at the time because of a tentative photo identification. But a tentative photo identification under the controlling Supreme Court standard for what constitutes probable cause does not give probable cause. You have to have evidence that the crime was committed by this particular defendant, a Rusty, and that's the Beck case. And a tentative photo identification, I believe the witness says that he wasn't sure it was him. So that doesn't provide for probable cause. Well, that wasn't the only fact though, right? I mean, we have the accumulation of other facts up until that point. That was sort of the period at the end of the sentence that somebody matching his description was seen with the trash can. The body was found by the trash can. The trash can was four doors down from where Mr. McDaniel lived. And when the police officer who saw him pulling the trash can into the parking lot where the body was found, he identified the photo array as somebody who looked like him. Isn't that what the facts were? He, in the photo identification, said he wasn't sure if it was him. It may have been, it might be him, something to that effect. The testimony on that can be found at 17-2 at page 23. But what you have to keep in mind here is we're really looking at what did the arresting officers know at the time they arrested him. We're not looking at what probable cause there was at the time he made the confession because there's an illegal arrest here. And under Brown, you have to show, the Supreme Court has directed that courts should apply the three-part test of Brown. And so once you have an illegal arrest, you have to show that any subsequent confession was sufficiently attenuated from that illegal arrest. It doesn't matter if you gain probable cause later. You still have to go through the attenuation analysis. And in that analysis, that analysis clearly supports suppression here. The first factor is the temporal proximity between the arrest and the confession. And as this court has observed, an illegal arrest can be exploited by a lengthy detention just as much as a brief detention. And you look at the circumstances of that detention. And under the circumstance here, that factor supports suppression. Was he, he wasn't coerced? I'm sorry? He was not coerced, was he? So there's testimony and record evidence that he was coerced. And there was a motion brought at the trial court asking that the suppression be, or the confession be suppressed for that reason, those reasons as well. But that was denied and that's not being challenged here. If the detectives had made the arrest rather than the officers, would there be probable cause in the speech? Not at the time the arrest was made. And no, there wouldn't have been later either. So... Well isn't your point the arresting officers knew little of what the detectives knew? Yeah, that's correct. The arrested officers knew less than the detectives, but not at the time of the arrest. Oh, so are you saying that we can impute the detectives' knowledge to the arresting officers at the time of the arrest? No, we cannot do that. So for various reasons. First, if the question is can we impute the tentative photo identification to the arresting officers, we can't because the record shows that the photo identification happened after Mr. McDaniel was arrested. Second, even if it happened before, it isn't enough for probable cause. And therefore, even if we could impute it, even if it happened before, then it's still not enough for the arresting officers to have arrested Mr. McDaniel. Third, under this court's precedent and the Supreme Court precedent, you don't impute the knowledge of another officer to the arresting officers unless there's some agency. And that agency would be in the form of the detectives here having told the arresting officers before they arrested Mr. McDaniel that the photo ID had happened. And the record is clear that that's not the case. And the record's also clear that there was no direction on behalf of the detectives to telling the arresting officers that they should arrest Mr. McDaniel. And I just want to clarify one point on that. We do cite on page 17 of our reply brief to testimony at the suppression hearing to that effect. And there's also even stronger record evidence of that that can be found in the trial transcript. And so that's at docket 17-2, page 171. So I just wanted to make that point because that didn't come to our brief. So no, for those three reasons, you cannot impute the tentative photo identification to the arresting officers here. And even if you did, it wouldn't give probable cause. But Mr. Blackman, the former officer. Yes, that's correct. After the lineup identified him positively, right? That's correct, yes. There was a lineup. But again, the proper analysis here is the probable cause. And a lineup itself was the fruit of that probable cause. And under the Supreme Court's case, Taylor v. Alabama, you cannot take a fruit of the arrest and use that as an intervening circumstance under the Brown test. So even though there was a lineup, that can't come into consideration here as a fruit of that arrest. Now, Respondent argues that because Mr. McDaniel consented to the lineup, that somehow makes it so that it can be an intervening circumstance. But that's just not the law. In Florida v. Royer, a similar argument came up. And the fact that the arrestee consented to the search couldn't be an intervening circumstance because that consent itself was a fruit of the illegal arrest. And so therefore, it can't be an intervening circumstance. Well, the officers didn't even think they were arresting him when they took him. They thought he was just going voluntarily, didn't they? The officers testified that they were just bringing him in for questioning, that they were just going to his house for questioning, you know, to ask him about the crime. But As the trial court held a holding that's never been challenged on appeal, a finding that's never been challenged on appeal, Mr. McDaniel was seized for the purposes of the Fourth Amendment when he was handcuffed in his home five minutes after four police officers arrived there and escorted to the police station. He never thought he could leave. He was never told he could leave. In fact, there was testimony if he had asked to leave, he wouldn't have been able to. And the Dunaway case has almost identical factual circumstances in terms of whether or not he was arrested. And in that case, the court found that seizures, whether or not the police say they're just for questioning or they're actually calling it an official arrest, that's irrelevant. What really matters is the circumstances. And the facts in Dunaway are identical to the circumstances here. Well, but that goes to the flagrancy of their conduct. They really didn't think they were doing it. They were wrong. So the trial court said. The main thing you look at in terms of flagrancy in the Brown factors is what was the purpose. And that's because you don't want to have arrests where the purpose is just to question. What you want is police officers to go and question and not arrest. They can ask him which is that Mr. McDaniel, they went to Mr. McDaniel's home to question him as a witness and not a suspect. And so the purpose is identical to that. Very close, as in Brown, they had similar testimony from the officers and they found that the third factor, the purpose and flagrancy supported suppression. So I think I'm into my rebuttal time, so I'll reserve that. OK, thank you. Ms. O'Connell. Please support. I'm Assistant Attorney General Erin O'Connell on behalf of the respondent. I'd like to begin by clarifying a couple of factual issues that were raised in the previous argument. The question as to what point he was placed under arrest is not completely clear from the trial judge's ruling. The trial judge never assigned a minute to the time that he was placed under arrest, but I think it can be inferred from the totality of its reasoning that it did not view that moment as the actual arrest, because it also talked about as factors supporting the arrest that he was taken from the home in a police car, was not given the option to drive himself, as also supporting this inference that an Another reason that we should find that as the point of arrest is that the court did find that the entire collective knowledge was sufficient at the time of the arrest, and it included within that collective knowledge the photo array ID. And we know from the record that the photo array ID occurred sometime between 8.30 and 9 o'clock p.m. It was going on roughly contemporaneously with the interview. Yeah, but what about the arresting officers? Is there any evidence they're aware of that? The arresting officers were not aware of the actual photo ID. What we know is that they were aware of everything detectives had learned up to the point of 8.30 p.m. So the record at 1480 to 81 shows that they knew that Officer Blackman had seen an individual pulling a trash can, and they knew that it matched the description of the height and weight, the description of this individual. And that, the state appellate court reasonably held, was sufficient without having the tentative photo ID to supply probable cause. And it's not just this description of physical appearance that the officers were going on. They also had, under the totality of the information available to them, the fact that this was the victim's boyfriend, that they had been seen recently together within days of her body being found, and they lived together at a place that was very close to where her body was found, I think within a few blocks. So all of that taken together was enough to provide the arresting officers with probable cause. And at a minimum, the Illinois appellate court, in concluding that that was sufficient, reasonably applied Supreme Court precedent. But if the court disagrees and says that a reasonable court could not find probable cause until the photo array ID, we do know that that was properly imputed by the state trial judge to the arresting officers under clearly established Supreme Court precedent. So the issue here is... Specifically what case? The general probable cause... Okay. You're just relying on the general fair... Right. There's a separate principle here involving imputation of knowledge or collective knowledge, however you want to phrase it. What precedent do you have for that doctrine? I would say what's clearly established is the general standard, but we also know that the Supreme Court has recognized in somewhat vague terms this notion of imputed or collective knowledge. And that was in Illinois v. Andreas. There was a footnote to that effect. There have been other cases where the Supreme Court has recognized something similar in that where one officer is acting at the instruction of another, that you can use the knowledge of the instructing officer to add up to probable cause to arrest at that time. Those cases also support application of a collective knowledge doctrine here. They do involve and express instruction, which isn't present here, but they don't purport to be defining the outer limits of this collective knowledge approach, but without necessarily clear contours. And other courts have, given the framework that that court has set forth, found, as the Illinois courts did here, that you can find collective knowledge without a specific communication of every fact that is being relied upon to provide probable cause. So we summarize Bailey v. Newland with a Ninth Circuit case where it decided the express issue of what is clearly established under collective knowledge. And it said the Supreme Court just hasn't ruled one way or the other. It summarized various courts of appeals and state courts which had adopted different approaches and said in light of all of these different approaches by these courts, we can't say that the Supreme Court has clearly established one way or the other. And so at a minimum under 2254d, the court should find that the Illinois court's application of that is a reasonable application of the relevant Supreme Court precedent. We're focusing here on the alleged ineffective assistance of appellate counsel, right? Correct. Is there anything in the record to indicate whether appellate counsel ever communicated with trial counsel with regard to the issue that is being challenged as not having been raised? I'm not aware of any of that in the record. Certainly when appellate counsel was considering the issues to raise, she did have before her the suppression hearing testimony, the trial judge's findings based on collective knowledge and all of the information that we're relying on to say that the arresting officers themselves had probable cause. So appellate counsel in reviewing that information certainly knew that it was a preserved issue, but had multiple grounds to conclude that this was not going to be a meritorious issue for trial. We don't know that because the appellate courts denied or the post-conviction courts denied him a hearing, correct? That's correct. So we don't know from appellate counsel what reasoning went into this, but we generally apply a presumption that counsel operates effectively and does what they're expected to do. And with respect to appellate counsel, that would certainly include reviewing the record and reviewing the issues that have been raised in a motion for new trial and considering those in addition to other claims. Here appellate counsel found an issue that trial counsel had neglected to raise, an issue based on the reference to polygraph examination testimony, and found that that was the strongest issue based on the entire record to pursue on appeal. And just to clarify, in our answer in the district court, we did not say that this was a patently meritless claim such that appellate counsel was deficient for raising it. We said it was patently meritless as a basis for habeas relief because it doesn't actually have a federal constitutional basis, and there's certainly no clearly established Supreme Court law with respect to polygraphs. But we did in our answer also say that this had a basis in state law, and that's relevant to the issue of counsel's deficiency because she was raising this issue under state law. So we haven't taken inconsistent positions here. It's not meritorious as a basis for habeas relief, but it was sufficiently meritorious under state law that appellate counsel could reasonably decide on that issue to pursue. And I think it's important to note that Illinois courts are particularly skeptical of polygraph evidence. So even though this was not a preserved issue and it was reviewed for plain error, in many cases the Illinois courts had concluded that this was so potentially prejudicial that essentially by showing error a party had shown that it was plain error and had found it to be reversible on that basis. And there was no clear case law that would have said to appellate counsel, this is just a clear loser. There were some areas where the appellate court ultimately went that said that this was not a meritorious claim, but that in hindsight shouldn't be relied on by the court. What was important is what was the lay of the land as appellate counsel was reviewing the claim? And was this a clearly meritless claim at the time counsel raised it? And the answer to that is no. And for a petitioner to show deficiency, he has to show not only that this was a meritorious claim, but that it was so meritorious that it was clearly stronger than the polygraph issue that counsel raised. And petitioner hasn't met his burden of showing that at this point. I'd also like to clarify that certainly by the time petitioner was interrogated probable cause had developed. The dispute in this case is over when the photo array ID occurred and whether that can be attributed to arresting officers. But that plainly occurred before petitioner had even arrived at the District 6 station sometime between 8.30 and 9 o'clock. Petitioner was then placed in a lineup before anyone asked him any questions at all about his whereabouts or his relationship with the victim. So the first thing that happened when he was taken to Area 2 at 10 o'clock was that he was put in a lineup. And at that point, to the extent Blackman's photo array ID is somehow tentative, he was absolutely certain when he viewed the lineup that petitioner was the man that he had seen carting around a city trash can within nearly 24 hours of the body being found and acting very suspiciously. So that was present at the time of the interrogation. And there really can't be any question that that provided probable cause. It wasn't necessary. There were other facts that had already established probable cause, but certainly I think it's beyond dispute that the positive solid ID from the lineup would have provided probable cause. Yeah, but that still is way after the arrest of Ms. O'Connell. That's correct. But it goes to whether the confession that followed it was a result of the exploitation of the FBI. Well, that confession, with all that knowledge that was presented to him, took quite a while for him to confess to that. It did. I think that's true. He was told about the lineup identification by a police officer, and that didn't immediately induce him to confess. I think that the reason that it took so long, it wasn't continual questioning for whatever 24 hours it took for him to finally make a confession. What was going on during that period was that he had provided some alibi witnesses, so this questioning was stopped, they were found, and they were questioned, and then it was when that had been completed that they came back. Is it clear whether the assistant state's attorney was in attendance the entire time? It seems, I don't know the exact site, but I believe her testimony at trial indicated that she arrived the day after he had first been taken into custody, around 8.30 or 9 o'clock. So she was not there during the interrogation? Correct. So the detectives had already obtained an inculpatory statement in oral? I just wondered if her presence or lack thereof might be a consideration. She was not present for that questioning. She did, though, at some point talk privately with the petitioner to try to get information from him about his treatment by the detectives, and she testified that he said at that time that he had been treated well, and the detectives themselves indicated that it was apparent to them that he was cooperating in the investigation, that he was willingly providing answers to the questions. Was it ever resolved whether he was handcuffed in the time he was in the interrogation room? I believe the only testimony to support a claim that he was handcuffed was his own, and it was his own testimony that he was handcuffed continuously. The detectives testified that he was not handcuffed at any point. The record suggests that the only time he was handcuffed was actually in his house, and under circumstances where it was immediately after they arrived he began to act agitated, and one of the officers at that point handcuffed him for a pat down. But other officers then said, oh, everything's fine, we're taking off the handcuffs, we want to assure you you're not under arrest at this point. So it was only during that brief period, I believe, that he was handcuffed, and it was explained to him that the reason for doing that at that time was because an officer had become fearful of his safety. So just to conclude, we've given the court a number of grounds. There are three separate and independent reasons that this claim would have failed on appeal had counsel raised it. It's because the arresting officers had probable cause. The entire team, including the detectives, collectively clearly had probable cause at the time of the arrest. And what time are you assigning to the arrest? I'm sorry. I think a fair reading of the record is that he was arrested when he was transported from his house, which was approximately 9 o'clock. And then also, even if the arrest was unlawful, there was no exploitation here, there was no flagrant misconduct. Certainly the officers unintentionally, in effect, arrested him thinking that he was cooperating, and they didn't even use the opportunity to question him but waited instead until the detectives could do so. But any one of these three bases would have been enough for competent appellate counsel reviewing the record to decide that this was not a meritorious claim and to not pursue it on appeal. So we would ask that the court affirm the denial of habeas relief. Thank you, Ms. O'Connell. Ms. Beach. Thank you, Your Honor. I just wanted to note a few things in rebuttal. I agree that the testimony is conflicting on whether or not Mr. McDaniel was handcuffed when he was in the interrogation room, but I will say that he was locked in that room and the testimony is clear that he would not have been allowed to leave and the door was locked, and so similar to being handcuffed from my perspective. As for the time of the arrest, looking at the trial court's ruling on that, the trial court says, let me cut to the chase. He was handcuffed in his home at one point. He was in custody at that moment. I don't think he was free to leave. So let's talk about whether they had a right to do that. And so he was handcuffed at 835, according to the record. Respondents said that the arresting officers were aware of everything that the detectives were aware of, with the exception of the photo identification. There's no evidence in the record that the arresting officers were ever told about the address on the trash can. So I just wanted to make that point clear. And also, the arresting officer that testified at the suppression hearing testified under oath that he did not believe he had probable cause to arrest Mr. McDaniel. In terms of the imputed knowledge doctrine or the collective knowledge doctrine, our position is that the clearly established Supreme Court rule is that you look to what the arresting officers knew to determine whether or not there were probable cause. Now, this court and the Supreme Court has carved out some very small exceptions to that rule, and those exceptions do not apply here. And so that Supreme Court rule about that you look to what the arresting officers know, that's what's governing. In terms of the respondent's position that the polygraph argument has merit, I would encourage the court to look back at what respondents said about that to the district court. They did make the argument that it was patently meritless for habeas relief, but also for the reasons that we stated and that the Illinois Court of Appeals held. So for the reasons we've presented in our brief, we ask that you grant Mr. McDaniel habeas relief. Thank you. All right. Thank you. Thank you.